PENMAN, Intervener, v. BLOUNT.
(No. 1099.)

(Court of Civil Appeals of Texas. Beaumont.
June 6, 1924.)

1. **Husband and wife** ⚙⇒121—**Trusts** ⚙⇒79, 81
(2)—**Land purchased by husband held wife's
separate property; where husband invests
wife's money in land, taking deed in his name,
resulting trust arises in her favor.**

Land purchased by husband with wife's
separate means is her separate property,
though he takes deed in his own name; result-
ing trust arising in her favor as equitable own-
er in proportion of amount furnished by her to
whole purchase price.

2. **Husband and wife** ⚙⇒255—**Trusts** ⚙⇒81
(2), 136½ — **Where title to land purchased
with wife's means vested in community, held
nevertheless wife was equitable owner and
her interest was not subject to levy for hus-
band's debts.**

Where land is purchased with wife's means,
but deed, though taken in her name, contains
no recitals that money was paid from her sepa-
rate estate or that conveyance was for her sole
and separate benefit, title vests in community;
but wife is equitable owner, resulting trust be-
ing created which cannot be defeated by levy
of attachment in proceeding against husband
or any other proceeding than sale by husband
to innocent purchaser for value or under execu-
tion against husband without notice of wife's
rights.

3. **Husband and wife** ⚙⇒131(1)—**Burden on
wife claiming attached property to prove that
it was her separate property.**

In suit on note, aided by attachment on lots
claimed by defendant's wife, who intervened,
burden was on her to prove allegation that land
was her separate property.

4. **Husband and wife** ⚙⇒132—**Husband's decla-
rations that lots attached in aid of suit on
his note belonged to wife held admissible.**

In suit on note, aided by attachment on
lots claimed by defendant's wife, who inter-
vened, testimony as to defendant's declarations
that property was wife's *held* admissible on is-
sue whether lots were bought wholly or partly
with wife's separate funds and as declarations
against interest, especially where made before
execution of note under circumstances showing
no motive to fabricate.

5. **Appeal and error** ⚙⇒843(1)—**Error not
likely to arise on retrial not discussed.**

Error not likely to arise on retrial need not
be discussed.

6. **Trial** ⚙⇒352(6)—**Question whether each lot
claimed by attachment defendant's wife was
paid for with her separate funds should be
submitted separately.**

In suit on note, aided by attachment on lots
claimed by defendant's wife, question whether
each lot was bought or paid for with wife's
separate funds should be submitted separately
and so framed as to show whether each was
paid for wholly or partly with her separate
funds, and, if partly, how much.

Appeal from District Court, Nacogdoches
County; L. D. Guinn, Judge.

Action by E. H. Blount against F. R. Pen-
man, in which Mrs. F. R. Penman intervened.
From judgment for plaintiff against inter-
vener, she appeals. Reversed and remanded.

S. M. Adams, of Nacogdoches, for appel-
lant.

S. W. Blount, of Nacogdoches, for appellee.

O'QUINN, J. E. H. Blount sued F. R.
Penman in the district court of Nacogdoches
county, Tex., on a note executed by Penman
to Blount for the sum of $15,000 and at the
time of filing the suit attachment was levied
upon some lots in the town of Nacogdoches
known as the Walker, Woods, Blount, and
Wright (sometimes called the Wilson) lots.
It appears that F. R. Penman had left the
country and his whereabouts were not known.
Mrs. F. R. Penman intervened in the suit
and set up ownership in all the property at-
tached, claiming same as her homestead, and
also that said property had been bought and
paid for with her separate means. At the
September term of the court, 1922, judgment
was rendered in favor of Blount on the note
and for foreclosure of the attachment lien,
subject to the rights of intervener, Mrs. F.
R. Penman, and the cause continued as to
the contest between plaintiff and intervener.
At the September term, 1923, the case was
tried to a jury upon special issues, upon
their answers to which judgment was ren-
dered in favor of appellant for the Walker
property and against her for the Woods,
Wright (Wilson), and Blount property, from
which judgment she has appealed.

The only question in the case is whether
or not the property attached as the property
of F. R. Penman, husband of intervener,
Mrs. F. R. Penman, was the property of in-
tervener, and therefore not subject to the
debts of her husband, F. R. Penman.

The record discloses that F. R. Penman
bought the Walker lot from Walker and wife
on September 3, 1907, taking the deed to him-
self. The consideration expressed was
$1,350, of which $450 was paid in cash and
six notes for $150 each were executed by
Penman. These notes were afterwards paid
by Penman. Penman bought the Woods lot
from Woods and wife on February 9, 1911,
taking the deed in his own name. The con-
sideration expressed was $1,050, of which
$400 was paid in cash and Penman executed
his note for $650. This note was afterwards
paid by Penman. Penman bought the Blount
lot February 10, 1916, taking the deed to
himself; the consideration expressed being
$1,500, of which $300 was paid in cash and
Penman executed his four notes for $300
each, and afterwards paid these notes. The
Wright lot was purchased April 26, 1920,
and the deed made to Mrs. Penman. The

⚙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

consideration expressed was $1, but Mrs. Penman testified that she paid the Wrights $700 for the property.

As we have concluded that the case must be reversed and remanded for another trial, we will not discuss the evidence, but will say that Mrs. Penman testified at length and claimed that each of the lots in question was bought and paid for entirely with her separate means, giving details of how she received the money that was used in paying for the property. She testified that her husband did not have anything to do with any of these lots, other than to pay off the purchase-money notes when they fell due, and that she furnished him the money out of her separate estate with which to make the payments, a goodly portion of which she claimed was rents that she collected from tenants of the various properties and kept for the purpose of discharging the notes. She also testified that she did not know for a considerable time that her husband had taken the deeds in his name.

[1] The rule is well settled that where the husband purchases lands, paying for same with the separate means of the wife, although he takes the deed thereto in his own name, the land is the separate property of the wife. In such case, although the legal title to the land is in the husband, yet the equitable title to the land is in the wife, because the purchase money came out of her separate estate. Where the husband invests his wife's money in land, taking the deed in his name, a resulting trust immediately arises in her favor. Parker v. Coop, 60 Tex. 111. And where the husband buys land and pays part of the consideration with his wife's separate means, the wife is the equitable owner of the land in the proportion that the amount of means she furnished bears to the whole purchase price. Blum v. Rogers, 71 Tex. 668, 9 S. W. 595.

[2] It appears from the record that the Wright lot in question was purchased by Mrs. Penman in 1920, and the deed made to her. However, the deed did not recite that the consideration was paid out of her separate means, or for her separate use and benefit. Where land is purchased with the wife's means and the deed taken in her name, but there are no recitals in the deed that the money was paid out of her separate estate, or that the conveyance was for her sole and separate benefit, the title vests in the community. However, the wife is the equitable owner, a resulting trust being created by the use of her money in the purchase of the land (McKamey v. Thorp, 61 Tex. 648), and this cannot be defeated by the levy of an attachment in a proceeding against her husband, or any other proceeding, other than a sale by the husband to an innocent purchaser for value, or a purchaser under execution against the husband, without notice of the rights of the wife. Evans v. Welborn, 74 Tex. 530, 12 S. W. 230, 15 Am. St. Rep. 858; Parker v. Coop, 60 Tex. 111; Ross v. Kornrumpf, 64 Tex. 390.

[3, 4] The burden was upon Mrs. Penman to prove her allegation that the property in question was her separate property. In support of this allegation, she offered to prove the following by the witness A. G. Edens:

"My name is A. G. Edens. I live in Nacogdoches, Tex. I knew F. R. Penman very well. I was in the land business in July, 1920, and I had many inquiries regarding the purchase of city property, and knew the Penman property that is now in dispute in this suit. I went to Mr. F. R. Penman, who was with the Wilson Grain Company, and talked to him about the Woods, Walker, Blount, and Wilson (Wright) property, and he told me that it did not belong to him, but was his wife's property, and that I would have to see her, as he had no interest in the same, as it was bought with her separate funds, and that he was in no wise interested in same. I went to see Mrs. Penman, at the suggestion of Mr. Penman, about listing this property with me for sale, and she refused to list it, as she did not care to sell it at that time. I again had an opportunity to sell the Wilson (Wright) property to Mr. Speer, and went to Mr. Penman, and he told me that his wife would not sell it, as it was hers."

Upon appellee's objection, this testimony was excluded, of which appellant complains. The court erred in excluding the testimony. The testimony was not offered as evidence in itself of title in Mrs. Penman, but as circumstances of her claim and its character, and of the recognition and admission of that claim by her husband, and, we think, was proper to be considered by the jury, in connection with the other testimony and circumstances in evidence, in determining the question of whether the lots were, in fact, bought, either wholly or in part, with the separate funds of Mrs. Penman. Baldridge v. Scott, 48 Tex. 189; Peters v. Clements, 46 Tex. 114; Conroy v. Sharman, 63 Tex. Civ. App. 482, 134 S. W. 244, 246; Mining Co. v. Bullis, 68 Tex. 587, 4 S. W. 860; McClintic v. Midland Gro. & D. G. Co., 106 Tex. 32, 154 S. W. 1157.

Appellant complains that the court erred in sustaining appellee's objection to the testimony of Claud Barrett, John Weatherly, and W. O. Stewart, by each of whom appellant sought to prove similar facts relating to the several properties to those set out as to the witness Edens. The exclusion of the testimony was error. The declarations of Penman were admissible. See authorities above. Furthermore, the record shows they were made prior to the execution of the note sued on by appellee, and at a time and under circumstances when it appears there was no possible motive for him to fabricate, and, besides, were declarations against his interest. Carleton-Ferguson D. G. Co. v. McFarland (Tex. Civ. App.) 230 S. W. 208.

[5] Appellant complains of other matters, some of which, we think, show reversible error; but as they are not likely to arise upon another trial of the case, we refrain from discussing them.

[6] We think it proper to say that upon another trial the question whether the properties were bought or paid for with the separate funds of Mrs. Penman should be submitted separately as to each of the lots in question, and should be so framed as to show whether said property was paid for in whole or in part with the separate funds of Mrs. Penman, and, if in part only, then how much. Schuster v. Bauman Jewelry Co., 79 Tex. 182, 15 S. W. 259, 23 Am. St. Rep. 327. It may be that the court's charge, especially Issue No. 1, was misleading to the jury. The issue reads:

"Special Issue No. 1. Was the Walker place, the Woods place, the Wright place, and the E. S. Blount place paid for with the separate funds of Mrs. Penman? You will answer 'yes' or 'no' as you find the facts to be, and will let your verdict answer by stating which one or all of the places it refers to."

To this charge the jury answered:

"We, the jury, answer special issue No. 1: All of the Walker lot only; Woods place, no; Wright place, no; E. S. Blount place, no."

The jury's answer, "All of the Walker lot only," suggests that the jury may have interpreted the charge to mean that the jury must find that the whole of the purchase price of the several lots was paid out of the separate funds of Mrs. Penman before they could answer in her favor; whereas, under the law, if any portion of the purchase price of either of said lots was paid out of her separate estate, she was the owner pro tanto. It may be that the same construction of the charge caused the jury to answer as to each of the other lots as they did. However this may be, we think the charge should be as above indicated.

The judgment is reversed, and the cause remanded.